UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
BOBBY PERRY,                                          **COMPLAINT**

                                                                                **15 CV 2833 (ALC)**
                                                                                 **ECF Case**
             Plaintiff,
    vs.

The CITY OF NEW YORK,
DETECTIVES JOSEPH TOWNSEND, Shield 5433,
JANE DOE, and JOHN DOES 1 – 2,                  **JURY TRIAL DEMANDED**
in their individual and official capacities,

                           Defendants.
----------------------------------------------------------x

Plaintiff Bobby Perry, by his attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This civil rights action arises from unlawful search, false arrest, and malicious prosecution of Bobby Perry ("Plaintiff") after a team of Narcotics detectives recklessly relied on a lying confidential informant, executed a search warrant in Plaintiff's apartment, and fabricated the results of the search. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for False arrest and imprisonment, illegal search, malicious prosecution, and failure to intervene, and a *Monell* claim against the City of New York for the same constitutional violations. Additionally, Plaintiff asserts analogous claims under New York Law against the individual defendants, and against the City of New York under the doctrine of *respondeat superior*. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

1

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff Bobby Perry is a 59-year-old African-American male who has worked as a janitor in Harlem Hospital for sixteen years; he is a United States citizen and a resident of Manhattan.

7. The individually named defendants Detective Joseph Townsend (Shield # 5433) ("Det. Townsend"), Detective Jane Doe ("Det. Jane Doe"), and Detectives John Doe 1-2 ("Det. Doe 1" and "Det. Doe 2") (collectively, the "individual defendants") are

and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

8.  On the date of the incident giving rise to this complaint, the individual defendants were assigned to the Narcotic Borough Manhattan North.

9.  Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

10. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

11. Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the incident, being assigned Claim # 2014PI019717. At least 30 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

12. The City of New York failed to demand a hearing pursuant to General Municipal Law § 50-h.

13. This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

14. In the Summer of 2013, Plaintiff began renting a room in a three-bedroom apartment ("the Apartment') inside 127 West 141 Street in Manhattan, New York City.

Plaintiff shared the Apartment with two other tenants, Charles Rashid ("Mr. Rashid") and Agnes Degaillard ("Ms. Degaillard"), from whom he subleased his room.

15. One day in October 2013, while Plaintiff was at work in Harlem Hospital, Mr. Rashid and Ms. Degaillard had a guest over at the Apartment with whom they were getting high on cocaine.

16. The guest was a confidential informant ("the CI") working with NYPD Narcotics detectives, including the individual defendants. Even though the CI is a drug addict and a criminal with incentives to deceive, cheat, and steal, the individual defendants recklessly took the CI at his word when he lied to them that Mr. Rashid and Ms. Degaillard were selling cocaine in the Apartment.

17. Det. Townsend and the other individual defendants had no reason to trust the CI, but they were so desperate and impatient for arrests and drug busts that they went along with the CI's assertions without properly verifying them.

18. Based on the CI's words, which the individual defendants embellished and falsely corroborated, Det. Townsend sought to obtain a search warrant. On November 19, 2013, he submitted an Affidavit in Support of Search Warrant #1235-2013 ("the Affidavit") to Judge Robert Mandelbaum of New York County Criminal Court.

19. The Affidavit purported to describe, from the point of view of the CI, narcotics sales in the Apartment conducted by Mr. Rashid and Ms. Degaillard. Despite being based on the CI's fabrications, and despite being weak and stale and failing to establish the reliability of the CI, the Affidavit was deemed, by Judge Mandelbaum, as sufficient to establish "reasonable cause to believe that evidence of the sale and possession of crack/cocaine…will be found" in the Apartment.

20. On November 19, 2013, without hearing from or seeing the CI, Judge Mandelbaum issued a warrant ("the Warrant") "authorizing a search" of the Apartment and the "persons of" Mr. Rashid and Ms. Degaillard. The individual defendants would execute the Warrant two days later.

21. Nowhere in the Warrant was Plaintiff mentioned or intimated. Before going to the Apartment, the individual defendants were not aware of Plaintiff's existence.

22. When Plaintiff went to bed on Thursday November 20, 2013, he was expecting a normal night of sleep, followed by a double shift at work starting early the next day. Plaintiff closed the door to his room, locked it, and went to bed.

23. Plaintiff's room was small and simple, but clean and free of anything nefarious such as weapons and drugs. The room consisted of a window, a closet, and basic furniture, a bed, a table, three dressers, a television on one of the dressers. There were numerous liquor bottles that Plaintiff had recently brought from the Bahamas (where he had vacationed) – but nothing unlawful.

24. On November 21, 2013, around 5:30 AM, when Plaintiff was sound asleep, a team of NYPD Narcotics detectives, including the individual defendants, smashed their way into the Apartment, tore down the door of Plaintiff's room, and pointed their guns at him, yelling, ordering Plaintiff out of bed, commanding him to get dressed.

25. Horrified, Plaintiff quickly put on pants and a shirt. Led by Det. Townsend, the individual defendants then placed him against a wall, handcuffed him behind his back, and told him to remain still.

26. Meanwhile, Mr. Rashid and Ms. Degaillard were also pulled out of bed and searched, while a German shepherd dog from the Narcotics Division sniffed and trotted around the Apartment.

27. Three of the individual defendants – Det. Jane Doe, Det. Doe 1, and Det. Doe 2, all wearing plain clothes – searched Plaintiff's room thoroughly for an hour, rummaging through Plaintiff's clothing and belongings, scouring every nook and compartment. They found no contraband, no drugs, no evidence of any wrongdoing in Plaintiff's room. They took $75 from his wallet.

28. Realizing this was an attempted drug bust, Plaintiff told the individual defendants that he doesn't use drugs, his only vice is alcohol.

29. Searching the whole Apartment, the individual defendants found only Mr. Rashid's small personal stash of marijuana and cocaine, consisting mostly of low-quality shards and residue, which was inside Mr. Rashid's room.

30. To justify spending NYPD resources and arresting all three people inside the Apartment, the individual defendants fabricated an account of finding drugs scattered in different rooms of the Apartment, in order to make it seem as if the whole place was involved in drug trafficking and this was a serious drug bust.

31. After the individual defendants searched the Apartment, Plaintiff was taken to a van with Mr. Rashid, Ms. Degaillard, and a man (unknown to Plaintiff) who lived upstairs in the same building. They were all under arrest, and the van transported them to a nearby Precinct.

32. At the Precinct, Plaintiff was processed, photographed, fingerprinted, searched and frisked, and caged in holding cells. After several hours, Plaintiff was transported to Central Booking in Manhattan.

33. After spending most of November 21, 2013 caged in the holding cells of Central Booking, Plaintiff appeared in New York County Criminal Court to be arraigned on Docket Number 2013NY088942.

34. Plaintiff was charged with two misdemeanor offenses – Criminally Using Drug Paraphernalia in the Second Degree, in violation of New York Penal Law ("PL") Section 220.50(2), Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of PL 220.03; and a violation, Unlawful Possession of Marijuana, in violation of PL 221.05.

35. The Criminal Court complaint ("the Complaint"), which charged Plaintiff, Mr. Rashid, and Ms. Degaillard as co-defendants, was based on the mendacious allegations of Det. Townsend.

36. In the Complaint, Det. Townsend "states" that "on or about November 21, 2013 at about 6:20 AM, inside 127 West 141 Street," he "executed Special Narcotics search warrant number 1235-2013, issued by the Honorable Robert Mandelbaum on November 19, 2013." While that is true, Det. Townsend then goes on to state a false narrative seeking to connect all three people in the Apartment with drug trafficking, to thereby justify the arrest of all three, including Plaintiff, who was not the target of the Warrant.

37. In the Complaint, Det. Townsend states, "I observed defendants acting in concert in that I observed defendant RASHID in bed in bedroom #2; defendant PERRY

7

in bed in bedroom #1; and defendant DEGAILLARD in bedroom #3.  I observed defendants to have in their custody and control the following items in bedroom #1:  (1) two folded dollar bills containing cocaine recovered from the top of a dresser; (2) two twists of cocaine recovered from the top of a dresser; and (3) one ziplock-type bag containing marijuana recovered from the top of a dresser."

38.     These allegations about cocaine and marijuana found in Plaintiff's room are false, mendacious, deliberately concocted by the individual defendants.

39.     Plaintiff uses no illicit substances and possessed no such substances in his bedroom.  The dollar bills, twists of cocaine, and bag of marijuana were actually in Mr. Rashid's bedroom where other drugs were found.

40.     Then, in the Complaint, Det. Townsend describes Mr. Rashid's room:  "I observed defendants to have in their custody and control the following items in bedroom #2:  (1) one clear ziplock-type bag containing cocaine from the television stand; (2) one ziplock-type bag containing residue from the floor; (3) one playing card with residue behind the television; and (4) mail bearing the address of the apartment and defendant RASHID's name."

41.     These illicit items in Mr. Rashid's room were in fact with the illicit items said to be found in Plaintiff's room.  But the individual defendants reconfigured the location of the drugs and paraphernalia to engulf all people in the Apartment, to create an image of an Apartment littered with cocaine, marijuana, and plastic bags in plain view.

42.     This fabricated image is buttressed by Det. Townsend's final allegations in the Complaint:  "I observed defendants to have in their custody and control numerous empty ziplock-type bags recovered from the bathroom."

43.     The Manhattan District Attorney's Office ("the DA"), in a prosecution spearheaded by Assistant District Attorney Benjamin Roth ("ADA Roth"), fell for the fabricated image of a drug- and ziplock bag-strewn apartment, buying the illusion of a serious drug bust, despite the fact that the quality and quantity of the drugs in the Apartment were more consistent with personal use than distribution.

44.     Because the individual defendants sold their lies and elaborate fabrications so effectively to the DA, the prosecution regarded this as a serious case.  Accordingly, at Plaintiff's arraignment, the DA requested $2000 bail and recommended 30 days jail on a plea to the charge, rather aggressive positions.

45.     Plaintiff did not plead guilty.  The Criminal Court Judge released him on his own recognizance, ending around twenty hours of unlawful custody.  But the Judge ordered Plaintiff to return to Criminal Court, Part B, at 100 Centre Street, on February 27, 2013.

46.     Plaintiff returned to Court on that date, and over the course of one year and four months, made eight additional court appearances as the prosecution sputtered and flailed with intensity, causing Plaintiff, who lives a decent law-abiding life, great anxiety and distress.

47.     Plaintiff's criminal case was finally dismissed on March 20, 2015, pursuant to New York Criminal Procedure Law Section 30.30, because the DA, after delaying for six months in producing the Affidavit, could not produce the CI to the Court for a *Darden* Hearing despite having six court appearances to do so.

48.     The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would

engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

49. There is a systemic failure to identify, discipline, and supervise NYPD officers who fabricate charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

50. The NYPD's flaccid response to lying officers – particularly in the context of filing false charges – constitutes an irrational custom and policy that fosters a culture of mendacity in the NYPD.

51. Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve. But when it comes to making false statements on court documents, NYPD officers almost never face discipline.

52. The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents. Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

53. The inadequacy of NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that ensure citizens are not wrongfully arrested and charged.

54. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

   b. Severe emotional trauma, distress, degradation, and suffering.

## SECTION 1983 CLAIMS

### FIRST CLAIM

**Deprivation of Federal Civil Rights Under Section 1983**

55. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

56. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

57. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

58. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

59. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

### SECOND CLAIM

**Illegal Search Under Section 1983**

60. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

61. By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from unlawful searches.

62. Without probable cause, a warrant, or consent, the individual defendants searched through Plaintiff's Apartment, where Plaintiff had an expectation of privacy.

63. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### False Arrest Under Section 1983

64. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

65. By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

66. As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a valid warrant, without privilege or consent.

67. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FOURTH CLAIM

### Malicious Prosecution Under Section 1983

68. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

69. By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from malicious prosecution.

70. Without probable cause, the individual defendants directly and actively initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt.

71. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Failure to Intervene Under Section 1983

72. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

73. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

74. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

75. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged .

## EIGTH CLAIM

### Municipal Liability Under Section 1983

76. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

77. By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of false arrest and malicious prosecution through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

78. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged .

## PENDENT STATE CLAIMS

### FIRST CLAIM

### False Imprisonment under N.Y. State Law

79. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

80. The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a proper warrant, and without privilege or consent.

81. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

### SECOND CLAIM

### Malicious Prosecution Under N.Y. State Law

82. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

83. As detailed above, the individual defendants intentionally and with actual malice initiated a felony prosecution against Plaintiff without probable cause. The prosecution terminated in Plaintiff's favor when all charges against him were dismissed.

84. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## THIRD CLAIM

**Unreasonable Search and Seizure Under New York State Constitution Art. I § 12**

85. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

86. Article 1, Section 12, of the New York State Constitution declares the right to be free from unreasonable searches and seizures.

87. Without probable cause and without Plaintiff's consent, the individual defendants invaded Plaintiff's Apartment, arrested Plaintiff, searched his person and home, took his property, confined him, and initiated false charges against him.

88. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FOURTH CLAIM

**Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law (Against Defendant City of New York)**

89. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

90. Defendant City owed a duty of care to Plaintiff to prevent the unlawful search, false arrest, malicious prosecution, and mental and emotional abuse sustained by Plaintiff.

91.     Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

92.     Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

93.     Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

94.     As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## SIXTH CLAIM

### Respondeat Superior Under N.Y. State Law

95.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

96.     Defendant City is the employer of the individual defendants.

97.     Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment – in this case, the false imprisonment, malicious prosecution, and unreasonable search and seizure committed by the individual defendants against Plaintiff.

98.     As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

a. An order awarding compensatory damages for Plaintiff Bobby Perry in an amount to be determined at trial;

b. An order awarding punitive damages in an amount to be determined at trial;

c. A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

d. Such other and further relief as this Court may deem appropriate.

DATED:   April 13, 2015                     _____s/_____
         New York, New York                 CYRUS JOUBIN, ESQ.
                                            88 Pine Street, 14th Floor
                                            New York, NY 10005
                                            (703) 851-2467
                                            joubinlaw@gmail.com
                                            Attorney for Bobby Perry